## Independent Order of Foresters v. Flora Haggerty.

1. BENEFICIARY ASSOCIATIONS—*Construction of By-laws.*—The province of section 9 of the by-laws of the Independent Order of Foresters of the State of Illinois, which provides for dropping a member from the order, is not self-executing, but requires affirmative action by the order.

2. SAME—*Waiver of Suspensions.*—The suspension of a member of a beneficiary association for non-payment of assessments is waived, and he again becomes a member in good standing, by the payment of his delinquent dues and assessments, and the acceptance of them by the order, without any other action on the part of the order except the accepting of the payment.

Assumpsit, on a beneficiary association. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 27, 1899.

Statement.—On August 10, 1891, Robert Haggerty, being a member of Court Elsdon, No. 256, of the Independent Order of Foresters of the State of Illinois, the high court issued to him a certain endowment certificate, whereby it

promised to pay to Flora Haggerty, his wife, the sum of $1,000, upon satisfactory evidence of the death of said member, providing said member was in good standing in the order at the time of his death, and also, among further conditions, that the said member would comply in the future with the laws, rules and regulations then governing the said order, or that might thereafter be enacted by the high court.

On November 14, 1893, said Court Elsdon forfeited its charter, and on November 12, 1893, a card signed by the high chief ranger and high secretary of said order was issued to Robert Haggerty, as follows:

"To whom it may concern: This is to certify that Brother Robert Haggerty, whose name is written by himself upon the margin of this card, was formerly a member of the late Court Elsdon, No. 256, I. O. F., which forfeited its charter on November 14, 1893; that he is now on the high secretary's books as a member at large, and upon proof of identification and being in possession of a receipt for the last assessment is entitled to the fraternal courtesies of the order."

Robert R. Haggerty died on December 14, 1896. On November 2, 1898, Flora Haggerty, as beneficiary, commenced this action against the high court of the Independent Order of Foresters of the State of Illinois, for the recovery of $1,000, being the amount set forth in the endowment certificate.

To the declaration of the plaintiff the defendant filed the plea of the general issue, and the following notices of defenses under said issue:

First. That on the 14th day of December, A. D. 1896, the said Robert R. Haggerty was not a member of the defendant order.

Second. The said Robert R. Haggerty was dropped from membership in the said order on account of failure on his part to pays dues and assessments due to said order on account of said membership, and on account of said certificate herein sued on, more than two months before the date of the death of said Robert R. Haggerty.

Third. That long before his death, to wit, about two months, said Robert R. Haggerty was dropped from membership in the said order for having failed to comply with the rules, regulations and by-laws of said order pertaining to the payment of dues and assessments to said defendant order.

Fourth. That long before his death, to wit, about two months, said Robert R. Haggerty forfeited his membership in said order because of having failed to comply with the rules, regulations and by-laws of said order, pertaining to the payment of dues and assessments to said defendant order.

The endowment certificate was introduced in evidence, and the death of Robert R. Haggerty on December 14, 1896, was shown.

The cash book and ledger of the appellant order, introduced in evidence by appellant, show that the last payment made by Robert R. Haggerty was on August 31, 1896, and amounted to sixty-two cents, and was in liquidation of assessment No. 211, and that he was marked suspended for non-payment of assessment No. 212.

An employe, as clerk of the appellant order, testified:

" I marked 'suspended' in the ledger. I did that of my own accord, in the line of duties as a clerk. I was instructed by the High Secretary. I never got any instructions from the High Board of Directors. I was ordered by the High Secretary. I did not get orders every day. I had no instruction of that individual suspension. I had instructions from Mr. Saunders that on the first of every month that every one who had not one full assessment to their credit was to be marked suspended. I received those instructions when I took charge of this book, some time prior to October, 1896."

On October 1, 1896, Robert R. Haggerty was marked " suspended " on the books of the defendant order.

The following letter was introduced in evidence, written by appellee to the financial secretary of the appellant order :

" Chicago, Oct. 4th, 1896.

Mr. Saunders :

Sir : My husband has been out of the city several weeks trying to find work. Therefore I am left entirely

alone with three children. I had intended to pay what I owed last week, but the morning I had made arrangements to go my child was taken with diphtheria, and have been up night and day ever since. Please give this your personal attention till I have an opportunity to straighten it and get a card of withdrawal. Yours truly,

MRS. HAGGERTY."

The following receipt was introduced in evidence :

"No.....                                    DEC. 12, 1896.
    BRO. ROBT. HAGGERTY,
            Dr. to Court M. at large, No..... I. O. F.
To assessment No. 212, 13, 14, 15, 16, 17,........... ——
    " dues to ......, 189 ......................... $3 72
    " arrears, per capita tax, Dec. 31................ 25

        Total.................................. $3 97
                    Received payment,
                        T. W. SAUNDERS,
                            Financial Secretary.
                            Geo."

It appears from the evidence that this receipt was signed by one George Snyder, who for two or three years had been employed as an assistant or clerk of the financial secretary, Saunders. It was the practice of the financial secretary to permit Snyder to receive and sign receipts for money paid into his office. Saunders, the financial secretary, testified that Snyder only "signed for" money paid into the general fund, and not for money paid in by members at large. But it appears from uncontradicted evidence that Haggerty, who was a member at large, had paid all his dues and assessments to Snyder from December 31, 1893, until July 27, 1896, and that Snyder had receipted for the same. Snyder occupied the position until some time after December 12, 1896, when he became a defaulter, as would appear from the evidence, and the money, payment of which is evidenced by the foregoing receipt, was never turned over by him to the appellant order.

The constitution and by-laws of the appellant order were introduced in evidence.

Sections 7, 8, 9 and 10 of the by-laws are as follows :

Ind. Order of Foresters v. Haggerty.

"SEC. 7. In case a beneficiary member has not to his credit in the endowment account of his court the full amount of one assessment in the risk class to which he belongs, for the amount of endowment held by him on the first day of each and every month, he shall stand suspended by his own action, and he shall not be entitled to any benefits from the court or the order during the time of such suspension, nor until he has been duly and legally reinstated. But if the subordinate court is indebted to such member, and such member fails to pay his assessment, he shall not stand suspended until the court has paid out for such member's endowment assessments, special endowment assessments, dues or fines, the whole of such indebtedness. No court shall carry members in arrears for endowment assessments on its books, or advance such arrearages out of the funds of the court.

" SEC. 8. A member suspended for non-payment of endowment assessments, or any accrued liability, such as dues, fines, or any legal extra tax or levy, imposed by his court, may be reinstated at any time within thirty days from date of suspension, by paying all high court assessments and other accrued liability that he would have paid had he remained continuously in good standing.

" SEC. 9. Any member suspended for non-payment of endowment assessment or any accrued liability, as provided in section 7 herein, and not having been reinstated within thirty days from the date of suspension, shall be dropped from membership in this order.

" SEC. 10. Any member who has been thus dropped from membership in the order may be reinstated at any regular meeting within a period of three months from the date of being dropped; *provided,* he shall pay all sums due from him at the date of his being dropped, and furnish a certificate of good health from the subordinate medical examiner, at his own expense, declaring him to be in sound health, and a majority of the members present at the meeting consent thereto. And *provided, further,* that the rights and privileges of such person and his beneficiary shall date from his reinstatement."

The cause was tried with a jury. The court instructed the jury to find for the plaintiff. Thereupon the jury rendered their verdict, assessing the plaintiff's damages at $1,093. A motion for a new trial was overruled by the court and judgment entered upon the verdict, and this appeal is prosecuted from that judgment.

JOHN C. HENDRICKS and EDWIN A. OLSON, attorneys for appellant.

STEDMAN & SOELKE, attorneys for appellee.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

But one question of controlling importance is presented, viz.: Did the payment of all assessments due upon December 12, 1896, as evidenced by the receipt of that date, operate to leave Robert Haggerty a member of the appellant order in good standing at the time of his death, on December 14, 1896?

We are of opinion that it did so operate, and that so far as appears from this record, the payment was regular and effective.

It is contended by counsel for appellant that Haggerty having been, by force of his default in payment of assessment 212, suspended in October, 1896, he could not, under the laws of the order, become again a member in good standing until he had been received back into the order under the provisions of section 10. We do not so understand the provisions. Section 7 provides for suspension upon failure of payment by a member, and makes other provisions governing the relation of the member to his subordinate lodge. Haggerty was not a member of any subordinate lodge, but was a member at large. If, however, he was still subject to suspension under the provisions of section 7, yet this did not operate to drop him from membership. The provisions of section 7 are self-executing to effect a suspension. The provisions of section 9, which provide for dropping a member from the order, are not self-executing, but require affirmative action by the order.

Haggerty's suspension, if he was suspended by non-payment of assessment No. 212, could be waived and he could become again a member in good standing merely by the payment of his delinquent dues and assessments and the acceptance of them by the order, and without any other

action on the part of the order except the accepting of the payment.

If Haggerty had been actually dropped from membership by affirmative action of the order, which he was not, then the contention of counsel that a reinstatement could not be effected merely by payment of delinquent dues and assessments would be tenable. But Haggerty had never, so far as the evidence discloses, ceased to be a member of the order, and he was, at most, merely under suspension for delinquency, and subject to a forfeiture of his membership, which forfeiture was never effected. N. W. T. M. Ass'n v. Schauss, 148 Ill. 304; High Court I. O. F. v. Edelstein, 70 Ill. App. 95.

That the payment of the delinquent dues was not made until after thirty days had expired from the date of the suspension, is not, as we view it, sufficient to prevent the payment and its acceptance from operating to waive the suspension. Evidently it was so regarded by the order, for the bill which was paid was formally made out to Haggerty as debtor on December 12, 1896, after more than thirty days had elapsed since the suspension. Elmer v. M. B. L. Ass'n, 19 N. Y. Supp. 289; Bankers & M. Ass'n v. Stapp, 77 Tex. 517; Moore v. Order of R. C., 90 Ia. 721.

So far as the regularity of the payment evidenced by the receipt is concerned, it is enough to say that the receipt, in the absence of any other showing, is not only sufficient evidence of payment, but it is evidence of a very high character. Winchester v. Grosvenor, 44 Ill. 425; Neal v. Handley, 116 Ill. 418.

That George Snyder, who, as clerk or assistant of the financial secretary, executed the receipt for him, afterward became a defaulter, is of no importance. So far as the record discloses, he was acting in his capacity as clerk or assistant of the financial secretary when this payment was made. His authority to receive this payment and to receipt for the same may be concluded from the fact that he had been permitted to receive and receipt for like payments by Haggerty for several years preceding.

The evidence shows a right of recovery. No defense was established. The court properly directed a verdict for the plaintiff, appellee.

The judgment is affirmed.